IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSHUA MATTHEW BLACKKETTER, | § | |
| | § | |
| Movant, | § | |
| | § | Civil No. 4:17-CV-682-O |
| v. | § | (Criminal No. 4:16-CR-112-O (01)) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is Joshua Matthew Blackketter's motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. ECF No. 1. He claims that his trial counsel was ineffective for failing to file a notice of appeal even after he was instructed to do so, and for failing to challenge the Court's Guidelines calculations at sentencing and on direct appeal. After holding an evidentiary hearing, the Court concludes that Blackketter did not, in fact, instruct his counsel to file a direct appeal. Moreover, because his remaining claims lack merit, the Court denies his Section 2255 motion with prejudice.

**Applicable Background**

Blackketter pleaded guilty to possession with intent to distribute a controlled substance. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 149. A Presentence Report ("PSR") was prepared. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 92. The PSR held Blackketter accountable for 2.06 kilograms of methamphetamine and thus set his offense level at 32. *See id.* at 10-11. The lion's share of that amount involved sales of methamphetamine to Jennifer Church ("Church") from December 2011 through 2015. *See id.* at 8-10 (holding Blackketter

responsible for the 1,842.66 grams of methamphetamine that he sold to Church). The PSR also recommended against an acceptance-of-responsibility reduction because Blackketter violated the terms of his pretrial release by using methamphetamine. *See id.* And the PSR added one point to his criminal history calculation for a 2002 conviction for possession of marijuana. *See id.* at 13. Altogether, the PSR calculated Blackketter's Guidelines sentencing range as 135 to 168 months' imprisonment. *See id.* at 20.

Blackketter, through counsel, raised three objections to the PSR. He argued for a reduction for acceptance of responsibility, urged that his marijuana conviction was too old to count towards his criminal history score, and claimed that the PSR over-represented the amount of methamphetamine for which he should be held accountable. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 105. As to the amount of methamphetamine, Blackketter argued specifically that Church was in jail during some of the months that Blackketter was alleged to have sold her methamphetamine. *See id.* at 5-6. An addendum to the PSR was issued; it acknowledged that Church was in custody from September 2012 through February 2013. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 129. Accordingly, the addendum reduced the amount of methamphetamine for which it held Blackketter responsible. Nevertheless, the reduced amount still resulted in a base-offense level of 32. *See id.* at 4.

At sentencing, Blackketter's counsel again pressed his three objections. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 192 at 4. The Court granted Blackketter a reduction for accepting responsibility, but it overruled his objections to his drug-amount and criminal history score. *See id.* The Court thus calculated his Guidelines sentencing range as 97 to 121 months in prison. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 150. The

Court sentenced him to prison for 97 months with a three-year term of supervised release. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 149. He did not appeal.

Blackketter timely filed this Section 2255 motion. *See* ECF No. 1. He claims that his trial counsel was ineffective for failing to (1) file a direct appeal, in spite of his explicit instruction to do so; (2) argue, on appeal, that the Court erred in calculating the quantity of methamphetamine for which Blackketter should be held responsible at sentencing; and (3) argue, at sentencing, that one of his prior convictions was too old for the Court to consider in its calculation of his Guidelines sentence. *See* ECF No. 3 at 5-10.

**Legal Standards**

Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims concerning the alleged ineffective assistance of counsel are reviewed under the two-prong test established in *Strickland*. To prevail on an ineffective assistance of counsel claim under *Strickland*, the movant must show both (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by his attorney's substandard performance. *Id.* at 687-91, 694.

Failure to File an Appeal

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court "held that the *Strickland* test applies to claims 'that counsel was constitutionally ineffective for failing to file a notice of appeal.'" *United States v. Bejarano*, 751 F.3d 280, 285 (quoting *Flores-Ortega*, 528 U.S. at 477). For those claims, the Court's *Strickland* analysis "begins with the question whether counsel 'consulted' with the defendant regarding an appeal"–that is, whether counsel advised "the defendant

about the advantages and disadvantages of taking an appeal, and [made] a reasonable effort to discover the defendant's wishes.'" *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (quoting *Flores-Ortega*, 528 U.S. at 478)).

"If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478. If the movant is able to demonstrate by a preponderance of the evidence that he requested an appeal, then "prejudice will be presumed and the [movant] will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *see also Flores-Ortega*, 528 U.S. at 485 (explaining that a "defendant, by instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and [is] entitled to a new appeal without any further showing.").

However, if

> counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached to the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for an appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interesting in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480-81).

Where the claim is that counsel breached his constitutionally-imposed duty to consult with the defendant about an appeal, prejudice is not presumed. Instead, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. "[E]vidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485. The Supreme Court has explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694).

## Discussion

Blackketter is Not Entitled to Relief on Claim (1)

Here, Blackketter does not claim that his trial counsel breached a duty to consult with him about the advantages and disadvantages of filing an appeal. Rather, he claims that he explicitly instructed his trial counsel to file a notice of appeal but that counsel failed to do so. *See* ECF No. 3 at 5-6.

In support of that claim, Blackketter alleged that–on the day of his sentencing hearing, before the Court imposed his sentence–he signed a notice of appeal, "assuming that counsel would file the notice." *See* ECF No. 3 at 5-6. He claimed that after he wrote to the United States Court of Appeals for the Fifth Circuit to request the docket sheet for his appeal, he learned for the first time that no appeal had been filed. *See id.*

The government filed a response and submitted an affidavit from Blackketter's trial counsel, George Dewayne Huston ("Huston"), who averred that Blackketter did not express any desire to appeal. *See* ECF Nos. 9 & 10. Huston explained that, in the days leading up to Blackketter's

sentencing hearing, he arranged for Blackketter to "provide information on approximately 50 people" to government agents in exchange for a reduction in his sentence. ECF No. 10 at 4-5; *see also* U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."). To that end, Huston requested that the Court delay the sentencing hearing so that Blackketter could debrief with the government. *See* ECF No. 10 at 4-5; *see also United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 127 (requesting that the Court continue the sentencing hearing in light of Blackketter's "wish to debrief with the agents in this case."). Once Huston learned that the hearing would not be continued, he scheduled a debriefing on the day of Blackketter's sentencing hearing so that, "although he would not receive a 5k reduction for cooperation, he could still potentially get a [Federal Rule of Criminal Procedure Rule] 35 reduction for information." *See id.* Huston further averred that–on the day of the sentencing hearing–he consulted with Blackketter "about the appeal process, read him the Court's paperwork on his right of appeal, had Blackketter sign once he understood the Court's paperwork, and then provided the paperwork to the Court." *See id.* at 4. And Huston averred that, after the Court imposed a 97-month sentence, Blackketter stated that he was "good with [his] deal," reneged on his agreement to cooperate with the government, and never indicated to him any desire to appeal. *See id.* at 5.

On January 23, 2018, the Court held an evidentiary hearing to resolve the factual dispute. At the evidentiary hearing, Blackketter testified that he was disappointed with his sentence of 97 months' imprisonment, and that he met with Huston after the hearing–in the marshal's office behind the courtroom–to explain that he did not wish to cooperate with the government agents but wanted to pursue a direct appeal. *See* ECF No. 16 at 6. Blackketter also testified that Huston agreed to file

an appeal and that he "would be in touch with [Blackketter]" once it was filed. *See* ECF No. 16 at 8. On cross-examination, Blackketter acknowledged that the "notice of appeal" that he referenced in his Section 2255 motion was actually a notice of his right to appeal, provided to him by the Court before sentencing. *See* ECF No. 16 at 10-12. Blackketter also called two other witnesses–both claimed that they met with Huston in the hallway after the sentencing hearing, and that Huston assured them he would pursue a direct appeal. *See* ECF No. 16 at 14-17.

Huston also testified at the evidentiary hearing:

> Joshua Blackketter's sentencing was a little different than most because up until approximately September of 2016 Josh was very vehemently against voicing any or being a snitch against anyone else, okay?
>
> Approximately September of 2016 my contact was always a lady named Stacy Gerhart. I cannot remember who this was in his family, but she was always my contact. She had notified me that [Blackketter] had information on approximately 50 people. I went to visit him in FCI. He did say that, yes, I do want to proffer on some people. I told him, "Well, you know, this will set you up potentially for 5K reduction." We were right up against the sentencing setting. I had spoken with -- I cannot remember if it was Chris Wolfe or Shawn Smith, that was the DEA, but [one agent] got in contact with Cy Crum, Brian Finney, and -- I can't remember the other [] DEA agent but, yes, they were interested. I had put in for a motion to extend the sentencing deadline on this case so we could get the proffer interview done before sentencing so the agents and the USA would have some idea of his value. I was turned down on my motion to extend the sentencing deadline. And so that day, those three agents or two agents were sitting in that first church pew on the far left, they were waiting to talk to Mr. Blackketter after sentencing, and I had told Josh, I said, "You're not going to get a 5K at this point because we are in the middle of sentencing." I said, "Potentially, if it's valuable, we can get a Rule 35 motion later on."
>
> So, until sentencing was actually imposed, they were all waiting to talk to Josh after all the sentencings for that day were complete. . . .
>
> After sentencing, like I said, Josh was looking at 135 to I

> believe 160 something [months]. After he got his three points and got moved down to 97 months, in my opinion he was very content. I asked him, I said, "Well, they're waiting to talk to you after all these sentencings are over with for the day. We are going to go to a room on the top floor and they are going to debrief you." He said a certain word I won't say in court. It started with F. He's like, "Blank them, I'm good." And I said, "So what do you mean you're good"? And he says, "I'm good with my time." . . .
>
> And I said, "Well, just like I told you over there, if you change your mind, you've got 14 days. You need to tell me.

*See* ECF No. 16 at 22-24.

Huston further testified that he was "more than sure" that Blackketter did not want to appeal and that, if Blackketter had asked him to file a notice of appeal, he "absolutely" would have because "it's fifteen minutes out of my life to sign a notice of appeal and file it." *See* ECF No. 16 at 25. Huston explained that he handled another case for Blackketter after this case was over, and though he had multiple contacts with Blackketter's family member throughout that case, Huston was never asked to file a notice of appeal in this case. *See id.*

The Court now concludes that Blackketter did not meet his burden to establish by a preponderance of the evidence that he instructed counsel to file a notice of appeal. *See Tapp*, 491 F.3d at 266 (holding that the movant has the burden to prove by a preponderance of the evidence that he requested an appeal). In making this factual finding, the Court credits Huston's testimony–that Blackketter was "very content" with his sentence and never expressed any desire to appeal it–over Blackketter's testimony, which was self-serving. *See United States v. Brown*, 727 F.3d 329 (5th Cir. 2013) ("the district court was well positioned to evaluate [the witnesses'] credibility and was entitled to reject their testimony as self-serving and inconsistent with the balance of the evidence presented.").

Specifically, the Court credits Huston's testimony that Blackketter struck an agreement to

cooperate with the government so as to avoid a sentence in the range that was proposed by the PSR–135 to 168 months' imprisonment. *See* ECF No. 16 at 28 ("[Blackketter] already said I'm happy with my sentence because, contrary to what he said on the stand, if I remember correctly, we sat in my office and I figured out actually how much dope he admitted to himself which is around 8650 grams and he told me basically [he] just wanted to make sure he gets under 10 [years]. He did get under 10 years."). On that point, Huston's testimony is corroborated by his motion to continue the sentencing to allow time for Blackketter to debrief with government agents. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 127. And, at the evidentiary hearing, Blackketter's habeas counsel conceded Blackketter's interest in cooperating to reduce his sentencing exposure. *See* ECF No. 16 at 38 ("Putting aside all the issues of whether or not [Blackketter] was happy with his sentence and whether or not he thought it would be worth cooperating. I think you can grant [Huston] all that being true.").

The Court further credits Huston's testimony that, because the Court sustained one of Blackketter's objections, calculated the low-end of his sentencing range as 97 months, and sentenced him at the bottom of that range, Blackketter was "very content" with his sentence. The Court thus credits Huston's testimony that Blackketter never expressed a desire to appeal. The Court gives substantial weight to Huston's testimony that, had Blackketter requested an appeal, Huston would have filed it because filing a notice of appeal is a simple task that takes no more than fifteen minutes. Accordingly, Blackketter is not entitled to relief on claim (1). *See Flores-Ortega*, 528 U.S. at 478 ("Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").

<u>Blackketter is Not Entitled to Relief on Claim (2)</u>

Blackketter next claims that his counsel was ineffective when he failed to argue, on direct

-9-

appeal, that the Court erred in calculating the quantity of methamphetamine for which Blackketter was held responsible at sentencing. He urges that counsel should have argued that "statements given by [Church] lacked corroboration." ECF No. 3 at 7. To the extent that Blackketter faults his counsel for failing to file a direct appeal, that claim lacks merit for the reasons set out above.

Moreover, to the extent that Blackketter claims that counsel should have appealed the Court's drug-quantity calculation, he is not entitled to relief because he cannot establish prejudice. *See Bejarano*, 751 F.3d at 285 (noting that a failure to satisfy either *Strickland* prong is fatal to an ineffective assistance of counsel claim). If Blackketter's counsel had raised that claim on direct appeal, the Fifth Circuit would have reviewed the Court's "findings of fact with respect to sentencing under the clear error standard." *United States v. Betancourt*, 422 F.3d 240, 244 (5th Cir. 2005). And the Fifth Circuit would not have overruled the Court's determination as long as it was plausible in light of the record read as a whole. *See id.* at 245.

Here, there was ample support for the Court's factual finding. Blackketter admitted to agents of the DEA that he had at least twenty methamphetamine-transactions with Church. Moreover, Church admitted to DEA agents that she had purchased methamphetamine from Blackketter consistently from the end of 2011 through 2015. The DEA agents' reports of those interviews were before the Court at sentencing, *see United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 116, and were sufficient to support the Court's factual finding regarding the amount of methamphetamine attributable to Blackketter. Accordingly, Blackketter cannot show that "that there is a reasonable probability that," but for counsel's failure to raise this argument on direct appeal, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus he is not entitled to relief on claim (2).

<u>Blackketter is Not Entitled to Relief on Claim (3)</u>

Blackketter also faults his counsel for failing "to object to the PSR's use of [Blackketter's] prior conviction" for marijuana possession on the grounds that "it was ten years older than the instant offense." ECF No. 3 at 8-9. Contrary to Blackketter's contention, however, his trial counsel raised–and the Court rejected–that exact argument. In his objections to the PSR, Blackketter's counsel argued against adding a "criminal history point" for Blackketter's marijuana conviction because it was "well beyond the ten year time frame as provided by [U.S.S.G.] § 4A1.2(e)(2)." *United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 105 at 7. And counsel pressed that point again at the sentencing hearing. *See United States v. Blackketter*, No. 4:16-CR-112-O (01), ECF No. 192 at 3-4 (arguing that the Court "need[ed to issue] a ruling" on his objection as to the addition of the criminal history point). Because Blackketter's counsel made the exact objection about which he complains here, he cannot meet either prong of *Strickland*. And he is not entitled to relief on claim (3).

**Evidentiary Hearing**

Upon review of the motion to vacate and the files and records of this case, the Court need not hold an evidentiary hearing to resolve claims (2) or (3). No evidentiary hearing is required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As explained above, the matters reviewed by the Court conclusively show that Movant is entitled to no relief.

**Certificate of Appealability**

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, and 28 U.S.C. § 2253(c), the Court denies a certificate of appealability. Movant has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable

or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 48 (2000).

In the event that Movant elects to file a notice of appeal, the Court notes that he will need to pay the appellate filing fee or submit a motion to proceed *in forma pauperis*.

## Conclusion

This Section 2255 motion is **DENIED** with prejudice as meritless.

**SO ORDERED** this **31st day** of **January, 2018**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**